THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| JAZMIN NORIEGA, MAYRA A. LORA OCHOA, LORENA D. OLIVERO BARRIOS, ANA E. NARVAEZ RUIZ, and BERNARD TROLY, on behalf of all others similarly situated, | ) ) ) ) ) ) | No. 25 C 12621 |
| *Plaintiffs*, v. | ) ) ) | Chief Judge Virginia M. Kendall |
| PURE'S FOOD SPECIALTIES, LLC | ) ) ) ) |  |
| *Defendant*. |  |  |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Jazmin Noriega, Mayra Lora Ochoa, Lorena Olivero Barrios, Ana Narvaez Ruiz, and Bernard Troly filed a complaint against Defendants Pure's Food Specialties ("Pure's Food") and Jesus Salazar alleging a violation of the Federal Wiretap Act and intrusion upon seclusion in violation of Illinois law, as well as sexual harassment and retaliation in violation of state and federal laws. (Dkt. 25). Pure's Food now moves to dismiss the Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (Dkt. 26). For the reasons stated below, Pure's Food's Motion to Dismiss [26] is granted in part and denied in part.

## BACKGROUND

The following facts are set forth in the Amended Complaint ("Complaint"), except where noted, which the Court accepts as true for the purposes of a motion to dismiss. *See Lavalais v. Village of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013).

1

Pure's Food is a food production and distribution company. (Dkt. 25 ¶ 5). Salazar was a supervisor at Pure's Food between July 3, 2024 and January 7, 2025. (Dkt. 25 ¶¶ 6, 9). Plaintiffs were employed by Pure's Food during this time, and at least one of them was supervised by Salazar. (*Id.* ¶¶ 4-6).

On multiple occasions between July 3, 2024 and January 7, 2025, Salazar installed a camera in at least one of the restroom facilities in Pure's Food's warehouse in Northlake, Illinois. (*Id.* ¶ 3). He placed the camera under the sink, facing the toilet. (*Id.*). According to Plaintiffs, Pure's Food owned the camera, computer, and wireless transmitter used by Salazar. (*Id.* ¶ 16). They further claim that Salazar had access to the equipment through his position as supervisor and that Pure' Food permitted him to install the camera at the facility to surveil employees. (*Id.* ¶¶ 17-18).

The camera captured footage of approximately thirty people, including Plaintiffs Noriega, Lora, Olivero, and Narvaez, using the restroom with their "private body parts exposed." (*Id.* ¶¶ 12, 39). The footage included both men and women using the restroom, but Plaintiffs assert that most of the people filmed were female. (*Id.* ¶ 13). No one who was filmed had given consent to be recorded while in the restroom. (*Id.* ¶ 19). The footage was wirelessly transmitted to Salazar's computer and saved onto memory cards. (*Id.* ¶ 15). Plaintiffs allege that Salazar installed the camera to film women and that capturing footage of men was incidental. (*Id.* ¶ 11-12). They further assert that Salazar watched the footage to "pleasur[e] his sexual desires of recording females without their knowledge." (*Id.* ¶ 15).

Pure's Food offered to pay for Noriega's mental health treatment after she learned that Salazar had captured footage of her private body parts in the restroom, which she accepted. (*Id.* ¶ 21-22). Noriega then cross-filed sexual harassment charges with the Illinois Department of Human

Rights ("IDHR") and the Equal Employment Opportunity Commission ("EEOC") on July 11, 2025. (*Id.* ¶ 25). Shortly after, Pure's Food stopped funding her mental health treatment. (*Id.* ¶ 47). Noriega alleges that Pure's Food took this action because she filed the charges. (*Id.* ¶ 24). On July 11 and 12, 2025, Narvaez and Troly also cross-filed sexual harassment charges with the IDHR and the EEOC alleging sexual harassment. (*Id.* ¶ 25). Plaintiffs do not allege that Troly was filmed by Salazar in the bathroom. (*See generally* Dkt. 25). Pure's Food terminated Troly and Narvaez on July 16 and August 27, 2025, respectively. (*Id.* ¶¶ 26-27). Plaintiffs claim that Narvaez and Troly were terminated because they filed charges about the alleged filming. (*Id.* ¶ 47).

Plaintiffs filed their Original Complaint against Defendants on October 15, 2025. (Dkt. 1). They amended the Complaint on February 12, 2026. (Dkt. 8). The Amended Complaint is titled "Class Action Amended Complaint," and states that Plaintiffs are bringing the allegations "each individually and on behalf of all others similarly situated." (*Id.* at 1). Plaintiffs allege a violation of the Federal Wiretap Act (Count I); sexual harassment in violation of Title VII of the Civil Rights Act ("Title VII") and the Illinois Human Rights Act ("IHRA") (Count II); retaliation in violation of Title VII and the IHRA (Count III); and a state law claim of intrusion upon seclusion. (*Id.* ¶¶ 29-57). In their Response to Pure's Food's Motion to Dismiss, Plaintiffs also raise an "implied" claim of negligent supervision. (Dkt. 34 at 2, 12-13). Pure's Food moves to dismiss all claims against it for failure to state a claim under Rule 12(b)(6). (Dkt. 26).

## **LEGAL STANDARD**

To survive a motion to dismiss for failure to state a claim, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Kaminski v. Elite Staffing*, 23 F.4th 774, 776 (7th Cir. 2022) (quoting Fed. R. Civ. P. 8(a)(2)). Specifically, "a plaintiff must allege 'enough facts to state a claim that is plausible on its face.'" *Allen v. Brown*

3

*Advisory, LLC*, 41 F.4th 843, 850 (7th Cir. 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). At the same time, "allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012) (citing *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937). As such, "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Further, the moving party bears the burden of establishing the insufficiency of the plaintiff's allegations. *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020).

## DISCUSSION

Plaintiffs concede in their Response that their Federal Wire Tap and intrusion upon seclusion claims should be dismissed against Pure's Food because they pertain only to Salazar. (Dkt. 24 at 2). Accordingly, Counts I and IV are dismissed as to Pure's Food. The Court only addresses Pure's Food's arguments regarding the remaining counts.

### I. Class Action Pleading Standards

As a preliminary matter, Pure's Food urges the Court to reject Plaintiffs' attempted characterization of this matter as a class action because they fail to meet the requirements under Federal Rule of Civil Procedure 23. (Dkt. 27 at 15). Plaintiffs did not respond to this argument. (Dkt. 34.) Although a party's failure to respond to an argument ordinarily constitutes waiver, *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010), the Court exercises its discretion to consider

4

the issue because the argument lacks merit. *See Gallardo v. Chi. Transit Auth.*, 2016 WL 7049055, at *3 (N.D. Ill. Dec. 5, 2016).

To bring a class action on behalf of others, a plaintiff must plead, and ultimately prove at the class certification stage, that the proposed class satisfies Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23; *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345-350 (2011). It is true that "[a]n action is not maintainable as a class action simply because plaintiff designates it as such." *Stromberger v. 3M Co.*, 1991 WL 83828, at *4 (N.D. Ill. May 14, 1991). Nonetheless, Plaintiffs have not yet moved for class certification, so Pure's Food's arguments are not ripe for consideration. *See, e.g., Mednick v. Precor, Inc.*, 2014 WL 6474915 at *7 (N.D.Ill. Nov. 13, 2014) (deferring consideration of class certification arguments to certification stage instead of pleadings stage); *Dominguez v. Micro Ctr. Sales Corp.*, 2012 WL 1719793 at *2 (N.D.Ill. May 15, 2012) ("As a general rule, whether a suit can be maintained as a class or collective action is determined not on a Rule 12(b)(6) motion, but on a motion to certify a class action under Rule 23 or a motion to certify a collective action under 29 U.S.C. § 216(b)."); *Howard v. Renal Life Link, Inc.*, 2010 WL 4483323 at *2 (N.D. Ill. Nov. 1, 2010) (collecting cases finding that 12(b)(6) motions for failure to define putative class are premature and pose questions "best left for class certification stage"). Accordingly, the Court declines to strike or dismiss any of Plaintiffs' class action allegations. The Court reminds Plaintiffs of the burden they must meet under Rule 23 should they wish to proceed with a class action.

## II. Sexual Harassment

In Count II, Plaintiffs Noriega, Lora, Olivero, and Narvaez bring a claim of sexual harassment in violation of Title VII and the IHRA. (Dkt. 25 ¶¶ 38-44). They allege that Salazar sexually harassed them by filming their private body parts while they used the restroom, and that

5

Pure's Food is vicariously liable for that conduct. (*Id.* ¶¶ 39-42). Pure's Food argues that this claim should be dismissed against it because (1) Plaintiffs were not contemporaneously aware of the allegedly harassing conduct and (2) Salazar's conduct affected both men and women. (Dkt. 27 at 9-11).

Title VII and the IHRA prohibit sexual harassment in the workplace. *See* 42 U.S.C. § 2000e–2(a)(1); 775 ILCS 5/2-102(D); *Sanchez v. El Milagro, Inc.*, 176 F.4th 961, 968 (7th Cir. 2026). Sexual harassment claims under the IHRA are analyzed using the same framework as claims under Title VII. *See Sanchez*, 176 F.4th at 968; *Owens v. Dep't of Human Rights*, 403 Ill.App.3d 899, 918 (2010). To state a hostile work environment claim under Title VII or the IHRA, plaintiffs must show that "(1) they were subject to unwelcome harassment; (2) the harassment was based on [sex]; (3) the harassment was so severe or pervasive as to alter the conditions of employment and create a hostile or abusive working environment; and (4) there is a basis for employer liability." *Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 900 (7th Cir. 2018). In the Seventh Circuit, there is only a "minimal pleading standard" for claims of sex discrimination. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008); *see also Tate v. SCR Med. Transp.*, 809 F.3d 343, 346 (7th Cir. 2015); *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1028 (7th Cir. 2013). At the same time, a plaintiff must "allege enough facts to allow for a *plausible* inference that the adverse action suffered was connected to her protected characteristics." *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 777 (7th Cir. 2022) (emphasis in original).

The Court will briefly discuss the first and fourth elements, which Pure's Food does not dispute. Pure's Food does not contest that Salazar's conduct was unwelcome. (Dkt. 27). Pure's Food also does not raise any arguments regarding its liability for this claim. (*Id.* at 9-11). Under Title VII, an employer's liability for sexual harassment depends on the status of the harasser. *Vance*

6

*v. Ball State Univ.*, 570 U.S. 421, 424 (2013). An employer is only liable for an employee's harassment of their co-worker if it was negligent in controlling working conditions, but it is strictly liable if a supervisor's harassment results in a tangible employment action. *Id.* As pled without dispute from Pure's Food, Salazar was a supervisor at the time he filmed employees in the bathroom. (Dkt. 25 ¶ 6). Thus, Plaintiffs have sufficiently alleged a basis for employer liability at this stage. *See, e.g., Tubbs v. Chicago Transit Auth.*, 2022 WL 971882, at *6 (N.D. Ill. Mar. 31, 2022).

### 1. Severe and Pervasive Conduct

Pure's Food argues Salazar's conduct was not sufficiently severe or pervasive to create a hostile work environment because Plaintiffs were not aware of the filming while it was happening. (Dkt. 27 at 2, 11). For a claim of sexual harassment to actionable, the activity must "be sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." *Sanchez*, 176 F.4th at 968 (citing *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 67 (1986)). The Seventh Circuit, however, has made clear that this is not an inquiry to resolve at the pleadings stage. *Huri v. Off. of the Chief Judge of the Cir. Ct. of Cook Cnty.*, 804 F.3d 826, 834 (7th Cir. 2015) ("[I]t is premature at the pleadings stage to conclude just how abusive [Plaintiff]'s work environment was"); *see also Johnson*, 892 F.3d at 901 ("Whether harassment was so severe or pervasive as to constitute a hostile work environment is generally a question of fact for the jury."). Regardless, Pure's Food's argument is not persuasive.

Alleged incidents of harassment are relevant to the severity or pervasiveness of a hostile work environment only if the plaintiff knew of them. *Mason v. S. Illinois Univ. at Carbondale*, 233 F.3d 1036, 1046 (7th Cir. 2000) ("Mean-spirited or derogatory behavior of which a plaintiff is unaware, and thus never experiences, is not 'harassment' of the plaintiff (severe, pervasive, or

other)"). Yet, all that matters is that a plaintiff became aware of the conduct while they were still employed. *C.f. Mason*, 233 F.3d at 1046 (derogatory comments did not constitute harassment where they were never made to the plaintiff or in his presence during his employment); *Chen v. Yellen*, 2021 WL 4226202, at *12 (N.D. Ill. Sept. 16, 2021), *aff'd*, 2023 WL 2967428 (7th Cir. Apr. 17, 2023) (allegations that co-worker made secret notes about plaintiff did not establish hostile work environment because plaintiff did not become aware of the notes until after her employment ended)[1]. Here, Plaintiffs became aware that Salazar had filmed them using the restroom while they were employed at Pure's Food. (Dkt. 25 ¶¶ 21-28). And as Pure's Food acknowledges, this conduct is abhorrent. (Dkt. 27 at 2). Accordingly, Plaintiffs' allegations are enough at this stage to plead the existence of a hostile work environment.

### 2. Equal Opportunity Harasser

Plaintiffs' harassment claim fails, however, because they do not sufficiently plead causation. Title VII and the IHRA prohibit discrimination and harassment "because of" or "on the basis of" an individual's sex. 42 U.S.C.A. § 2000e-2(a); 775 ILCS 5/2-101(E-1). Pure's Food invokes the equal opportunity harasser doctrine to argue that Plaintiffs fail to establish that their harassment was based on sex. (*Id.* at 10). Under this doctrine, as adopted by the Seventh Circuit, harassment is not actionable if the alleged harasser mistreats both men and women alike because the plaintiff cannot show that the harassment occurred based on the plaintiff's sex. *Holman v. Indiana*, 211 F.3d 399, 402-05 (7th Cir. 2000); *see also Pasqua v. Metropolitan Life Ins. Co.*, 101 F.3d 514, 517 (7th Cir.1996) ("Harassment that is inflicted without regard to gender, that is, where

---

[1] The other cases Pure's Food relies on are similarly unpersuasive. First, in *Pryor v. Seyfarth, Shaw, Fairweather & Geraldson*, the Seventh Circuit noted that allegations that the plaintiff's co-worker "leered at her" without her knowledge were irrelevant to determining whether the co-worker's harassment was pervasive. 212 F.3d 976, 979 (7th Cir. 2000). But this is a summary judgment case, and the Court did not dismiss the harassment claim merely on those grounds. *Id.* at 978-79. Second, *Cottrill v. MFA, Inc.*, 443 F.3d 629 (8th Cir. 2006) is an out-of-Circuit case that is not binding on this Court.

males and females in the same setting do not receive disparate treatment, is not actionable because the harassment is not based on sex.").

In *Holman*, the Seventh Circuit considered claims of sexual harassment made by a husband and wife against their co-worker. *Id.* at 401. The wife alleged the co-worker touched her, made sexist comments, and asked her to "go to bed" with him. *Id.* The husband alleged the same co-worker grabbed his head while asking for sexual favors. *Id.* The Court held that their claims were properly dismissed by the lower court because Title VII does not cover the "equal opportunity harasser." *Id.* at 403. It explained that a person who harasses men and women in the same way is not discriminating on the basis of sex because "[h]e is not treating one sex better (or worse) than the other; he is treating both sexes the same (albeit badly)." *Id.* Thus, the Court concluded, inappropriate conduct that is "inflicted on both sexes or is inflicted regardless of sex" does not constitute sexual harassment. *Id.*

The doctrine applies here. Plaintiffs allege that Salazar captured, viewed, and stored video footage of male *and* female employees using the bathroom at Pure's Food's facility. (Dkt. 25 ¶¶ 9, 12, 14). The harassment was inflicted on both sexes, so it does not constitute prohibited harassment. *See Holman*, 211 F.3d at 404-405; *Pintea v. Varan*, 2016 WL 6877627, at *7 (N.D. Ill. Nov. 22, 2016), *aff'd sub nom. Pintea v. Gurvey*, 692 F. App'x 798 (7th Cir. 2017) ("An 'equal opportunity' victimizer, whatever else he may be charged with, is not subject to liability for discrimination."); *Armintrout v. Bloomingdale's Pizza, Inc.*, 2007 WL 837279, at *8 (N.D. Ill. Mar. 13, 2007) (dismissing claims of sexual harassment where plaintiff alleged that male employees inappropriately touched and made sexual comments to male and female coworkers); *Peppers v. Benedictine Univ.*, 2017 WL 6816734, at *4 (N.D. Ill. Dec. 12, 2017) (plaintiff failed to state a claim of sexual or race-based harassment where he alleged that defendant "harangued"

and used vulgar language to the "entire staff"); *Pascua v. Jewel Food Stores, Inc.*, 2022 WL 1045639, at *4 (N.D. Ill. Apr. 7, 2022) (equal opportunity harasser doctrine applied where plaintiff claimed that the defendant took the same allegedly harassing actions against male and female employees).

Plaintiffs argue that Salazar was not an equal opportunity harasser because women were the primary targets of his misconduct and were treated worse than the men he also filmed. (Dkt. 34 at 5). Harassing conduct directed at both women and men may still be actionable if the harassment of women was "far more severe and prevalent" than that directed at their male coworkers. *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 940-41 (7th Cir. 2007). Plaintiffs concede that Salazar secretly recorded the private body parts of both women and men using the restroom. (Dkt. 34 at 5). They contend, however, that women were treated more severely because it is a "reasonable inference" that Salazar masturbated only to the recordings of women. (*Id.* at 5-6). That inference rests solely on Plaintiffs' allegations that Salazar installed the camera to satisfy a sexual desire to watch women use the restroom. (Dkt. 25 ¶¶ 11, 15). But Plaintiffs allege no facts supporting that asserted motive beyond the conclusory allegation itself, much less facts suggesting what Salazar did with the recordings after capturing them. The Court's role at this stage is to determine whether the well-pleaded factual allegations state a plausible claim for relief—not to supply speculative inferences unsupported by those allegations. *Lanahan v. Cnty. of Cook*, 41 F.4th 854, 862 (7th Cir. 2022) (recognizing that a court is "not obligated to accept sheer speculation, bald assertions, and unsupported conclusory statements" on a motion to dismiss) (internal citation omitted). Because Plaintiffs' theory depends on speculation about Salazar's subjective intentions and use of the recordings, rather than well-pleaded facts, the Court need not accept it as true. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (citing *Iqbal*, 556 U.S. at 681)

10

(recognizing that a court is not required to accept speculative or conclusory allegations as true on a motion to dismiss).

Even accepting the allegations and inference as true, Plaintiffs' argument still fails. Plaintiffs contend that the men captured in the footage could not have been harassed in the same way as the women if Salazar did not film them to satisfy a sexual desire. (Dkt. 34 at 5-6). They rely on *McDonnell v. Cisneros*, 84 F.3d 256, 260 (7th Cir. 1996), but this reliance is misplaced. (Dkt. 34 at 5). There, the Seventh Circuit expressed doubt regarding the concept of an equal opportunity harasser, contemplating that male coworkers may use it to avoid Title VII liability by occasionally harassing men even if they prefer women. *McDonnell*, 84 F.3d at 260. *McDonnell* predates *Holman*, where the Seventh Circuit recognized the doctrine as a valid challenge to the "because of sex" requirement and explicitly rejected the theory that it could be misused to avoid liability. *Holman*, 211 F.3d at 404. Moreover, the Seventh Circuit has since clarified that harassing conduct need not be motivated by a sexual desire or be overtly sexual in nature to support a claim of sex discrimination. *See Haugerud v. Amery Sch. Dist.*, 259 F.3d 678, 694 (7th Cir. 2001); *Berry v. Delta Airlines, Inc.*, 260 F.3d 803, 811 (7th Cir. 2001)[2]. The harassing conduct here is being filmed without consent while using the restroom, not being the purported subject of an individual's sexual desire. Accordingly, even if Plaintiffs' allegations about Salazar are true, it would not negate the severity of the harassment allegedly experienced by men.

---

[2] Plaintiffs rely on *Beard v. Flying J, Inc.*, 266 F.3d 792, 798 (8th Cir. 2001) to argue that women were the primary targets of Salazar's harassment. (Dkt. 34 at 5). There, the Eighth Circuit held that harassment of female employees was based on sex even though the harasser directed similar conduct at male employees because that conduct was "probably not sexual." *Beard*, 266 F.3d at 799. This holding is contradicted by the binding Seventh Circuit precedent cited above recognizing that conduct need not be sexual in nature to be considered harassment. Moreover, the male and female employees in *Beard* were subjected to similar, but not identical, harassing conduct. *Beard*, 266 F.3d at 797-99. Here, female and male employees were subjected to the same conduct—being filmed without consent while using the restroom.

11

Further, whether or not Salazar was sexually attracted to women and men is irrelevant; what matters is whether he "in fact *did* sexually harass members of both genders." *Shepherd v. Slater Steels Corp.*, 168 F.3d 998, 1011 (7th Cir. 1999). Plaintiffs allege that both men and women were subjected to the same alleged harassing conduct, so it could not have been based on sex. *Compare Scaife v. United States Dep't of Veterans Affs.*, 49 F.4th 1109, 1117 (7th Cir. 2022) (holding that harassment was not based on gender where the harasser mistreated men and women in the same way) *with Swidnicki v. Brunswick Corp.*, 23 F. Supp. 3d 921, 935 (N.D. Ill. 2014) (equal opportunity harasser doctrine did not apply where comments to female coworker were more frequent and inappropriate than comments made about male coworkers).

Plaintiffs also argue that their IHRA harassment claim should survive even if their Title VII claim does not because the equal opportunity harasser "defense" does not apply to sexual harassment claims brought under the state law. (Dkt. 34 at 6). To start, Plaintiffs misconstrue the doctrine as a defense to Title VII suits. It is not a defense to an otherwise actionable claim. Rather, it is an enunciation of the principle that Title VII prohibits harassment *because of* a protected characteristic, not merely offensive or inappropriate conduct. *Holman*, 211 F.3d at 402-04. If a harasser treated men and women alike, the plaintiff cannot establish an essential element of a sex-based harassment claim; thus, the issue is not whether a defense applies, but whether a viable claim exists at all. *See, e.g., Peppers*, 2017 WL 6816734, at *4 (holding that the defendant was an equal opportunity harasser and dismissing Title VII harassment claim because plaintiff failed to establish that the conduct was based on his sex or race).

Similar to Title VII, the IHRA prohibits harassment *on the basis of* an individual's sex. *See* 775 ILCS 5/2-101(E-1). Thus, allegations that a harasser treated men and women the same would negate causation for an IHRA harassment claim in the same way it would for a Title VII claim.

12

Plaintiffs boldly assert that there are no Illinois state court cases applying the doctrine. Not so. In *Torain v. Illinois Hum. Rts. Comm'n,* an Illinois appellate court upheld the dismissal of the plaintiff's IHRA harassment claim because he failed to establish that the alleged harassment was on the basis of his sex. 2024 IL App (1st) 240080-U, ¶¶ 37-38, *appeal denied*, 260 N.E.3d 82 (Ill. 2025), and *cert. denied*, 146 S. Ct. 378 (2025). The court noted that none of the statements cited as harassment referred to the plaintiff's sex or were directly only toward male employees. *Id.* at ¶ 37. While the Court does not reference the doctrine by name, it applies the principle it stands for. And this makes sense, given that, as discussed above, Illinois courts routinely apply federal Title VII precedent when analyzing claims under the IHRA. Therefore, Plaintiffs fail to establish that Salazar's conduct was based on sex under Title VII or the IHRA.

In sum, while Salazar's conduct is undeniably reprehensible, Plaintiffs have not established that it is actionable under Title VII or the IHRA. As such, Plaintiffs' harassment claim fails. Count II is dismissed.

### III.    Retaliation (Title VII, IHRA)

In Count III, Plaintiffs Noriega, Narvaez, and Troly allege that Pure's Food retaliated against them in violation of Title VII and the IHRA. (Dkt. 25 ¶¶ 45-50). Courts analyze Title VII and IHRA retaliation claims under the same framework. *See Reed v. Freedom Mortg. Corp.*, 869 F.3d 543, 547 (7th Cir. 2017) (federal district courts analyzing claims under the IHRA may rely on Title VII case authority).Even though the Court dismisses Plaintiffs' harassment claim, their retaliation claim may survive. To succeed on a retaliation claim, a plaintiff need not prove that the underlying conduct constituted a Title VII violation. *See Magyar v. Saint Joseph Reg'l Med. Ctr.*, 544 F.3d 766, 771 (7th Cir. 2008). All that is required to bring a successful retaliation claim is that

a plaintiff "reasonably believed in good faith that the practice she opposed violated Title VII." *Fine v. Ryan Int'l Airlines*, 305 F.3d 746, 752 (7th Cir. 2002).

To state a claim for retaliation, a plaintiff must allege they engaged in protected activity, suffered an adverse employment action, and there exists a causal connection between the protected activity and the adverse employment action. *Freelain v. Village of Oak Park*, 888 F. 3d 895, 901 (7th Cir. 2018). Pure's Food does not contest that Plaintiffs Noriega, Narvaez, and Troly engaged in protected activities when they filed EEOC charges. (Dkt. 25 ¶¶ 23, 25, 27) (Dkt. 27 at 12-13); *see Coleman v. Donahoe*, 667 F.3d 835, 859 (7th Cir. 2012) (holding that "formal EEOC charges [are] the most obvious form of statutorily protected activity."). Nor does it dispute that Narvaez and Troly's terminations or the cessation of payment for Noriega's mental health treatment constitute adverse employment actions. (Dkt. 25 ¶¶ 24, 26, 28) (Dkt. 27 at 12-13); *Lewis v. City of Chicago*, 496 F.3d 645, 652 (7th Cir. 2007) (holding that a materially adverse action is any "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibility, or a decision causing a significant change in benefits").

Instead, Pure's Food challenges Plaintiffs' allegations as to causation. (Dkt. 27 at 12-13). It argues that Plaintiffs fail to sufficiently allege causation because their allegations of a "causal nexus" are too conclusory and they do not establish that Pure's Food was aware of the EEOC charges at the time of the alleged adverse actions. (*Id.*). "[A]t the pleading stage, a Title VII retaliation claim requires only that the plaintiff allege that [they] engaged in a statutorily protected activity and [were] subjected to adverse employment action as a result." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 828 (7th Cir. 2014) (internal citation omitted)). For a retaliation claim to survive a motion to dismiss, a plaintiff is not required to "present proof of a causal link between the

14

protected expression . . . and the adverse employment action." *Luevano v. Wal–Mart Stores, Inc.*, 722 F.3d 1014, 1029 (7th Cir. 2013).

Plaintiffs allege that they filed EEOC charges, suffered adverse employment actions within days or weeks, and that the adverse actions were taken because of the filings. (Dkt. 25 ¶¶ 23-28). Demonstrating a temporal proximity between the protected activity and the adverse employment action is enough to allege causation at the pleading stage. *See Raul A. Vasquez, Plaintiff, v. City of Chicago, Defendant.*, 2022 WL 23035219, at *9 (N.D. Ill. Sept. 22, 2022). Should this case reach summary judgment, Plaintiffs will have to prove that Pure's Food had actual knowledge of their protected activities. *See Eaton v. J. H. Findorff & Son, Inc.*, 1 F.4th 508, 512-13 (7th Cir. 2021). But their allegations are enough to survive a motion to dismiss. *See, e.g., Barzi v. Fermi Rsch. All., LLC*, 2026 WL 1194748, at *16 (N.D. Ill. May 1, 2026). Accordingly, Pure's Food's Motion is denied as to Count III.

## IV.     Negligent Supervision

Finally, Pure's Food argues that, to the extent Plaintiffs assert a failure-to-supervise claim, it must be dismissed because it is barred by the Illinois Workers' Compensation Act ("IWCA"). (Dkt 27 at 12-13). Plaintiffs argue in their Response that the Court should allow their negligent supervision claim to proceed against Pure's Food, (Dkt. 24 at 12-13), yet they do not assert any such claim in their Complaint. (Dkt. 25). It does not matter that Plaintiffs did not bring a failure-to-supervise claim as a distinct count if they included in their Complaint sufficient factual allegations that state a plausible claim for relief under Illinois state law. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) (a plaintiff does not need to plead legal theories); *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015) ("[T]he question at this stage is simply whether the complaint includes factual allegations that state a plausible claim for relief.").

15

To state a claim of negligent supervision, a plaintiff must allege that "(1) the employer had a duty to supervise its employee; (2) the employer negligently supervised its employee; and (3) such negligence proximately caused the plaintiff's injuries." *McNerney v. Allamuradov*, 416 Ill.Dec. 455, 84 N.E.3d 437, 452 (Ill. App. Ct. 2017) (citation omitted). Under Illinois law, the IWCA is the exclusive remedy for accidental injuries transpiring in the workplace. *Nischan v. Stratosphere Quality, LLC*, 865 F.3d 922, 934 (7th Cir. 2017) (citing *Meerbrey v. Marshall Field & Co.*, 564 N.E.2d 1222, 1225 (1990)). Any claim for employer negligence is ultimately a claim for accidental injury. *Arnold v. Janssen Pharmaceutica, Inc.,* 215 F. Supp. 2d 951, 957 (N.D. Ill. 2002) ("An act of negligence, even if committed by the employer itself, is "accidental" for purposes of the IWCA."). Accordingly, a claim of negligent supervision is preempted by the IWCA "unless the employee-plaintiff proves: (1) that the injury was not accidental; (2) that the injury did not arise from his or her employment; (3) that the injury was not received during the course of employment; or (4) that the injury was not compensable under the Act." *Meerbrey,* 564 N.E.2d 1222, 1226 (Ill. 1990) (citing *Collier v. Wagner Castings Co.*, 408 N.E.2d 198, 201 (Ill. 1980)).

The Plaintiffs have not argued that any of the IWCA's exclusivity-limiting provisions apply to their claim, nor do any facts alleged in their Complaint or Response suggest as much. Accordingly, Plaintiffs' negligent supervision claim is dismissed with prejudice. *Phillips v. Exxon Mobil Corp.*, 2018 WL 3458286, at *4 (N.D. Ill. July 18, 2018); *Malhotra v. CVS Health Corp.*, at *3 (N.D. Ill. Aug. 4, 2025)

16

**CONCLUSION**

For the reasons set forth above, Pure's Food's Motion to Dismiss [26] is granted in part and denied in part. The Motion is denied as to Count III. Count II is dismissed without prejudice. To the extent Plaintiffs assert a claim of negligent supervision, it is dismissed with prejudice.

Date: July 27, 2026